IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TONY DIXON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 16-CV-1222-NJR-GCS |
|  | ) |  |
| CHRISTINE BROWN, VIPIN SHAH, | ) |  |
| JAMES BLADES, THOMAS SPILLER, | ) |  |
| JACQUELINE LASHBROOK, JOHN | ) |  |
| BALDWIN, LOUIS SHICKER, | ) |  |
| MICHAEL DEMPSEY, STEVEN | ) |  |
| MEEKS, WEXFORD HEALTH | ) |  |
| SOURCES, INC., and MICHAEL | ) |  |
| SCOTT, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson[1] (Doc. 119), which recommends the undersigned District Judge deny the motions for summary judgment for failure to exhaust administrative remedies filed by Defendant Michael Scott (Doc. 88) and Defendants John Baldwin, James Blades, Christine Brown, Michael Dempsey, Jacqueline Lashbrook, Steven Meeks, Louis Shicker, and Thomas Spiller ("IDOC Defendants") (Doc. 92). The IDOC Defendants objected to the Report and Recommendation on January 30, 2019 (Doc. 122); Defendant Dr. Scott objected on February 4, 2019 (Doc. 123). For the reasons set forth below, the Court adopts in part and rejects in part Judge Wilkerson's Report and Recommendation.

---

[1] This case was recently transferred to United States Magistrate Judge Gilbert C. Sison following Judge Wilkerson's retirement (Doc. 121).

## BACKGROUND

Plaintiff Tony Dixon is a 49-year-old former inmate of the Illinois Department of Corrections (IDOC) (Doc. 73). Prior to his incarceration, Dixon received a full orthotropic heart transplant, requiring him to take immunosuppressant medications (*Id.*). Dixon also suffers from hyperkalemia (high potassium), chronic kidney disease, chronic obstructive pulmonary disease (COPD), high blood pressure, constipation, type two diabetes, high cholesterol, renal osteodystrophy, and gout (*Id.*). These ailments require him to take various medications and consume a renal diet (*Id.*).

On February 14, 2014, Dixon entered Pinckneyville Correctional Center (*Id.*). Because he was involved in a pending criminal case, however, he was regularly transported between Pinckneyville and the Northern Reception and Classification Center ("NRC") when he was required to appear in court (*Id.*).[2]

On April 25, 2016, Dixon filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights (Doc. 1). Specifically, Dixon claims Defendants repeatedly failed to provide him with the medical treatment and medication necessary to care for his heart transplant, heart diseases, and kidney diseases, leading to multiple medical complications, and culminating in cardiogenic shock and acute renal failure requiring a 16-day hospital stay (Doc. 73). The Court appointed counsel to represent Dixon, and the case is now proceeding on the Third Amended Complaint (*Id.*).

Defendants consist of various physicians and administrators employed by the IDOC and its medical services contractor Wexford Health Sources, Inc. Dr. Vipin Shah

---

[2] In addition to these regular transfers, from October 29, 2014 through February 4, 2015, Dixon was temporarily housed on a writ at the NRC (Doc. 97, ¶ 19).

and Dr. Michael Scott are employees of Wexford Health Sources, Inc. Dr. Shah worked at Pinckneyville prior to January 2016, and Dr. Scott worked at Pinckneyville after January 2016. Christine Brown was the Health Care Unit Administrator ("HCU Administrator") at Pinckneyville. James Blades was a lieutenant at Pinckneyville and also served as the Leisure Activities Supervisor. Thomas Spiller was the warden of Pinckneyville prior to July 2015, and Jacqueline Lashbrook was the warden after July 2015. John Baldwin is the Director of the IDOC. Louis Shicker was the IDOC Medical Director prior to June 2016, Michael Dempsey was the IDOC Medical Director from June 2016 to November 2016, and Steven Meeks is the current IDOC Medical Director.

In Count I, Dixon alleges Defendants Shah, Scott, and Brown, in their individual capacities, and Defendants Blades, Spiller, and Lashbrook, in their individual and official capacities, were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, in that they were aware of his serious medical conditions, yet allowed his conditions to go untreated and unchecked (*Id.*). Specifically, Dixon claims Defendants Shah, Scott, Brown, Spiller, and Lashbrook failed to provide him with continuous and timely access to his required medications, failed to monitor and control his medical issues, failed to provide him with a low-cholesterol, renal diet, and failed to coordinate with his outside physicians to care for his medical issues. He further claims Defendants Shah, Brown, Spiller, and Lashbrook failed to communicate and coordinate with the NRC during his transfers to ensure he received his medications (*Id.*). Finally, he claims Defendants Shah, Brown, Lashbrook, and Blades failed to provide him access to the physically challenged gym (*Id.*).

In Count II, Dixon claims Defendant Baldwin, Shicker, Dempsey, and Meeks, in their individual and official capacities, as well as Wexford, violated his Eighth Amendment rights because they had notice and knowledge of failures in the medical system for prisoners transferred to the NRC but, nonetheless, failed to take reasonable measures to protect him from harm (*Id.*). Instead, they continued to allow certain policies and practices to continue including failing to ensure prisoners have continuous and timely access to required medication and failing to ensure prisoners transferred between Pinckneyville and the NRC were provided uninterrupted medical care (*Id.*).

Counts III and IV, respectively, allege Defendants Brown, Blades, Lashbrook, and Baldwin, in their official capacity, failed to provide reasonable accommodations in violation of the Americans with Disabilities Act, 24 U.S.C. § 12101, *et seq* and the Rehabilitation Act, 29 U.S.C. § 794. Specifically, Dixon claims these Defendants denied him access to the physically challenged gym at Pinckneyville.

All Defendants except Dr. Shah and Wexford have moved for summary judgment asserting Dixon did not properly exhaust his administrative remedies before he filed this lawsuit, as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.* (Doc. 88, 92). Judge Wilkerson held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), on October 15, 2018, and subsequently entered a Report and Recommendation on January 16, 2019 (Doc. 119). Judge Wilkerson recommended that the undersigned deny Defendants' motions for summary judgment in full. Both Dr. Scott and the IDOC Defendants objected to the Report and Recommendation.

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**A.     Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence

of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

**B.     Illinois Exhaustion Requirements**

As an inmate in the IDOC, Dixon was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. 20 ILL. ADMIN. CODE § 504.810(c).

Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer (CAO or "warden"), he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the CAO, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill ILL. ADMIN. CODE § 504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO, who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

### I. IDOC Defendants' Objection

The IDOC Defendants object to Judge Wilkerson's factual findings and recommendations and argue that none of the grievances filed by Dixon properly exhausted his administrative remedies with regard to them. Recognizing that Dixon filed a plethora of grievances, the Court will address those focused on by both the parties and Judge Wilkerson.

#### A. June 29, 2015 Emergency Grievance

With this emergency grievance, Dixon complains his medical records were never

mailed to his heart transplant cardiologist at the University of Chicago despite a request for them in November 2014, nor had anyone from "Pinckneyville C.C. Medical Staff or Administration" contacted the cardiologist about Dixon's medical conditions (Doc. 96-23). Dixon further states he had two stents implanted on April 1, 2015, and has been having breathing problems ever since but nothing has been done (*Id.*). He states that "Pinckneyville C.C. Warden, Asst. Wardens, and 'entire' Health Care Administration" are ignoring his grievances. Dixon specifically names Defendants Brown and Spiller as turning a blind eye to his medical conditions and states that dates he references are just examples and not the basis of his grievance (*Id.*).

Because Dixon filed this grievance as an emergency, it should have gone directly to the CAO, who then was required to indicate "what action shall be or has been taken" on the grievance. *See* 20 ILL. ADMIN. CODE § 504.840(b). Here, however, there is no indication it went directly to the CAO. Nor did the CAO ever provide a response to it as required by the Administrative Code. Instead, the counselor responded on July 6, 2015, that the grievance was untimely based on the dates contained in the grievance (*Id.*). The Grievance Officer concurred on July 24, 2015, and the ARB subsequently rejected the grievance as untimely. (*Id.*; Doc. 96-24). But because the CAO never responded to the grievance in any fashion, the ARB's suggestion that the grievance was untimely[3] is irrelevant. *See Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014). Dixon never received a response from the CAO, and so he "didn't have to do anything further to keep his grievance alive." *Id.*

---

[3] Although the grievance was denied as being untimely based on the dates contained in the grievance, Dixon clearly says the problems are "ongoing."

Accordingly, the Court agrees with Judge Wilkerson that the administrative process was unavailable to Dixon. Dixon therefore exhausted his claims in Count I that Defendants Brown and Spiller were deliberately indifferent to his medical conditions by failing to coordinate with his outside doctors and properly monitor and control his health conditions is exhausted.[4] However, because Lashbrook did not become warden until July 2015, this grievance does not exhaust his claims against her in Count I.

### B. August 28, 2015 Grievance

On August 28, 2015, Dixon submitted a grievance complaining that while he was issued a medical permit on June 25, 2016, to attend the ADA gym because his heart medication makes him sensitive to sunlight and he cannot walk on the yard, the "LTS Supervisor, along with R.3-Officers and Lieutenant, including all (3) Wardens," refused to issue him a call pass or put him on the ADA gym list (Doc. 96-1). He further states that although he finally received a call pass to attend the ADA gym on August 21, 2015, the ADA gym is canceled two to three times per month—after already being reduced from twice per week to once per week (*Id.*). Dixon also mentions that "Stateville N.R.C. and Pinckneyville C.C. Medical Staffs, Doctors and Administration has been delaying my life saving medications on multiple occasions, which in turn has caused me to develop coronary artery disease." (*Id.*). As relief, Dixon requests the ADA gym stop being canceled and be extended back to two days a week, and that all three wardens be notified about his health conditions (*Id.*).

The counselor responded to the grievance on September 21, 2015, stating that, per

---

[4] As discussed by Judge Wilkerson, Defendants made no effort to distinguish between the individual and official capacity claims against each Defendant; therefore, neither does the Court.

the HCU, Dixon could go to yard with general population if he wears a shirt to cover his arms or purchases sunscreen from the commissary (*Id.*). The Grievance Officer issued a report on October 3, 2015, stating that gym line scheduling is an "administrative decision" based on factors including safety and security of the institution and may be cancelled for safety or security reasons (Doc. 96-3). Accordingly, the Grievance Officer recommended the grievance be denied (*Id.*). The CAO concurred on October 21, 2015 (*Id.*). Dixon appealed the decision to the ARB, which denied the grievance because scheduling of the ADA gym line is an administrative decision (Doc. 96-4). IDOC Director John Baldwin concurred in the denial on March 30, 2016 (*Id.*).

There is no dispute this grievance was fully exhausted. Defendants argue, however, that Dixon did not provide sufficient information to determine which of the Defendants the grievance referred to and, therefore, he did not exhaust his claim against any of the named Defendants.

The Court disagrees. First, Dixon's grievance was never rejected as procedurally improper and was decided on the merits. *See Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (argument that defendants were not identified must fail where grievance was rejected on the merits at every stage of review without any indication it was procedurally deficient). Second, the Seventh Circuit has recognized that, while the Illinois Administrative Code has been revised to require the name or a description of the persons involved in the complaint, the "Department of Corrections has been slow to make that requirement explicit on the forms it gives inmates." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013). Thus, when a prisoner uses a grievance form that only asks for a "Brief

Summary of Grievance," the Court of Appeals has held that the omission of names or identifying information is not dispositive of the issue. *Id.*; *Maddox*, 655 F.3d at 721. On this grievance, Dixon was only asked to provide a "Brief Summary of Grievance." And while Dixon testified that he received an orientation manual or inmate handbook that contains the grievance process, the contents of the handbook are not in the record.

Even if he were required to identify the individuals involved, Dixon identified the "LTS Supervisor" and "all three wardens" in his grievance, as well as "Stateville NRC and Pinckneyville CC Medical Staffs, Doctors and Administration." Defendants acknowledge that Defendant Blades was the Leisure Activities Supervisor; thus, the "LTS Supervisor" Dixon refers to reasonably can be inferred to be Defendant Blades. Furthermore, Brown was the Pinckneyville HCU Administrator, Defendant Spiller was the Pinckneyville warden until July 2015 and Defendant Lashbrook was the Pinckneyville warden after July 2015, meaning Dixon adequately identified them as well. Accordingly, Dixon sufficiently described Defendants Brown, Spiller, and Lashbrook and exhausted his deliberate indifference claims against them in Count I regarding his timely access to medication and the lack of coordination between Pinckneyville and Stateville NRC during his transfers to ensure he received his medication. He also exhausted his claim in Count I regarding his access to the ADA gym with regard to Defendants Blades and Lashbrook.

Furthermore, because the complaint was about an administrative decision regarding the ADA gym, the Court further finds that the grievance exhausted Dixon's ADA and Rehabilitation Act claims against Blades, Lashbrook, and Baldwin in Counts III

and IV. *See Maddox*, 655 F.3d at 722 ("[Plaintiff complained about an administrative decision—the cancellation of AHI services—and it belies reason to suggest that prison administrators at Lawrence were unaware of who was responsible for that decision.").

Finally, the Court finds this grievance—along with the numerous others complaining about the delay in receiving his required medications[5]—sufficient to exhaust Dixon's claim in Count II against Baldwin, Shocker, Dempsey, and Meeks.[6] *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("[I]t would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision.").

The Court is not convinced, however, that this grievance exhausted Dixon's claims regarding his access to the ADA gym in Counts I, III, and IV with regard to Defendant Brown. Brown was the HCU Administrator and, while she responded to the grievance as far as it was related to Dixon's inability to be in direct sunlight as a result of his medication, there is no indication that Dixon was grieving her inaction with regard to the ADA gym line. Accordingly, the ADA gym access claim in Count I, as well as Counts III and IV will be dismissed as to Brown.

### C. August 29, 2015 Grievance

In this grievance, which directed Dixon to provide only a "Brief Summary of

---

[5] For example, his November 19, 2014 emergency grievance, which only requested a "Brief Summary of Grievance," complains he has gone weeks without his medication at the NRC (Doc. 96-16). The CAO denied the emergency nature of the grievance on January 13, 2015, but the ARB did not receive the appeal until March 19, 2015 (*Id.*). However, crediting Dixon's testimony regarding when he would receive grievances back and his practice of copying them (as discussed *infra*)—combined with the fact that Dixon was transferred from the NRC back to Pinckneyville on February 5, 2015—the Court finds the delay excusable.
[6] As noted by Judge Wilkerson, no argument has been made that some of all of Dixon's "official capacity" claims against any Defendants may be redundant.

Grievance," Dixon complains he was served grapefruit juice at lunch, which could have killed him given the medication he takes for his heart transplant (Doc. 96-29). He also says that three different medical specialists have recommended he be put on a special diet for his high blood pressure, high cholesterol, failing kidneys, and acid reflux, but that Dr. Shah and "Pinckneyville Medical Director and Medical Administration" all refuse to honor those recommendations (*Id.*). He further complains that his kidneys are getting worse and his potassium level is causing damage to his transplanted heart (*Id.*). As relief, he seeks a high fiber, low-cholesterol, and low-sodium diet due to his failing kidneys (*Id.*).

The counselor responded on September 9, 2015, stating that no therapeutic diet had been requested and that his claims of needing a high fiber, low-cholesterol, and low-sodium diet have been referred to the HCU Administrator (*Id.*). Based on this information, the Grievance Officer recommended that the grievance be denied (Doc. 96-31). On September 21, 2015, Brown responded that drinking grapefruit juice will not kill him but rather just lower the strength of his medication, and that he can refuse to drink it if he chooses (Doc. 96-30). The CAO concurred that the grievance should be denied on October 1, 2015 (Doc. 96-31). The ARB received Dixon's appeal on November 13, 2015—11 business days after the 30-day deadline for appealing—and denied it as being untimely (Doc. 96-32).

Dixon provided a sworn affidavit and testified at the *Pavey* hearing that he would not receive a returned grievance for two to three weeks after the CAO signed it (Doc. 97, p. 2). Before mailing his appeal to the ARB, he would send the documents to the law library to have them copied because sometimes he would not get a response or get his

original grievance back (*Id.*, p. 3). He would then receive his copied grievance documents back from the law library within five to seven business days of mailing it to them, at which point he would mail the appeal to the ARB (*Id.*). Dixon testified he had no control over his mail after he placed it in his cell bars to be sent out (*Id.*). Judge Wilkerson found this testimony credible.

While Defendants implied at the *Pavey* hearing that making copies was an unnecessary extra step, the Court notes that the Seventh Circuit has condoned making copies of grievances and has held that waiting on copies may constitute "good cause" for failing to file a grievance on time under § 504.810(a) when the inmate is diligent in his attempt to meet the deadline. *See Pyles v. Nwaobasi*, 829 F.3d 860, 867 (7th Cir. 2016);[7] *but see Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (no facts showing diligence by inmate). In this case, there is no indication from the grievance as to when it was returned to Dixon. But given his testimony that he would not receive a grievance back for two to three weeks after the CAO signed it, and that it took five to seven days for the law library to make a copy, the Court finds that Dixon was diligent in his attempt to meet the appeal deadline. Thus, his claim in Count I related to his diet is exhausted as to Brown, Spiller, and Lashbrook. *See Conley* 513 F. App'x at 601; *Maddox*, 655 F.3d at 721 (when prisoner uses form that only asks for "Brief Summary of Grievance," names and identifying information are not required).

II.    **Dr. Scott's Objection**

As an initial matter, Dixon asks the Court to strike Dr. Scott's objection because it

---

[7] The Court acknowledges that no such "good cause" exception is explicitly provided for in the section relating to appeals. *See* § 504.850.

was untimely filed. The Report and Recommendation was entered on January 16, 2019, and objections were due within 14 days. Accordingly, Dixon argues, Dr. Scott should have filed his objection by January 30, 2019. The Court notes, however, that the docket text accompany the Report and Recommendation gave a deadline of February 4, 2019 (Doc. 119). Because Dr. Scott filed his objection on February 4, 2019, the Court will consider it timely filed.

Dr. Scott, the only Wexford defendant who filed a summary judgment motion, states in his motion that he was only added as a defendant in the Third Amended Complaint because Dixon's counsel learned that Dr. Scott replaced Dr. Shah, whose employment at Pinckneyville ended in January 2016 (Doc. 89).

Dr. Scott acknowledges that Dixon filed a grievance on February 15, 2016, complaining that he did not receive certain medications (*Id.*, pp. 31-34). That grievance, however, did not specifically name Dr. Scott. And while Dixon appears to have taken the grievance through the institutional review process, Dr. Scott argues he did not submit on appeal to the ARB within the required 30-day timeframe. Additionally, the ARB did not deny his appeal until May 13, 2016, nearly three weeks *after* Dixon filed this lawsuit (*Id.*). Accordingly, Dr. Scott argues this grievance did not exhaust Dixon's claims against him.

In the February 15, 2016 grievance, Dixon complained that he was denied his diabetic medication on specific shifts on January 30, 2016, and January 31, 2016, causing his sugar level to rise and making him weak and light-headed (Doc. 89-1, p. 14). The nurse, however, did nothing about it. Then, on February 4, 2016, Dixon was denied his fiber tablets, which caused constipation (*Id.*). Finally, Dixon complained that from

February 11 to February 15, 2016, he was denied his medication that helps him with bowel movements (*Id.*, p. 15). Dixon concluded: "This problem of Pinckneyville Medical Chief Administrator, Doctors, and staff has been going on for over 2 years and for some reason, they refuse to give me my medication on time." (*Id.*).

The counselor responded on February 29, 2016, noting that HCUA Brown indicated Dixon's medical chart showed he was given his medicine on the dates in question (*Id.*, p. 14). For this reason, on March 5, 2016, the Grievance Officer recommended that the grievance be considered moot (*Id.*, p. 13). The CAO concurred on March 14, 2016 (*Id.*) Dixon signed the section titled "Committed Person's Appeal To The Director" on April 5, 2016 (*Id.*). The ARB received Dixon's appeal on April 20, 2016, and denied it as untimely (*Id.*, p. 12).

Because the appeal was denied as untimely, Dr. Scott argues Dixon failed to properly exhaust his grievance. At the *Pavey* hearing, however, Dixon testified that while he received the grievance back from the CAO sometime at the end of March or the first week of April, he chose to first send the grievance to the law library to make a copy to maintain a record (Doc. 114, p. 60). He then received the grievance back from the law library around April 12, 2016, "or the day before." (*Id.*, p. 59). Dixon testified that he would have sent it out to the ARB he day he received it from the law library (*Id.*).

First, as discussed above, the Court notes that the Seventh Circuit has condoned making copies of grievances and has held that waiting on copies may constitute "good cause" for failing to file a grievance on time under § 504.810(a), *see Pyles v. Nwaobasi*, 829 F.3d 860, 867 (7th Cir. 2016). Second, Dixon testified that he sent out the February 15, 2016

grievance to the ARB on April 12, 2016 "or the day before," *i.e.*, within the 30-day appeal period ending April 13, 2016. Courts in this Circuit routinely find that an appeal is deemed submitted the day it was mailed, and Defendants have offered no argument to the contrary. *See Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) (finding mailbox rule applied to appeal placed in mail within 30-day period but received by ARB outside the time to appeal); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner filed timely appeal to the ARB by placing it in prison mail system even though it was never received by the ARB); *Dewalt v. Pitts*, No. 12-CV-118-MJR-SCW, 2013 WL 4051704, at *5 (S.D. Ill. Aug. 11, 2013) (grievance appeal "is deemed submitted the day that it was mailed"); *Schadel v. Evans*, Case No. 09–1338, 2010 WL 2696456, at * 2 (C.D. Ill. July 7, 2010) (finding appeal was timely when it was placed in the mail one day before the 30-day deadline). The Court accordingly finds that Dixon timely appealed the February 15, 2016 grievance.

Even if Dixon's appeal was timely, however, Dr. Scott argues that Dixon filed his Complaint prior to receiving a final determination on the merits from the ARB. Thus, he did not properly exhaust his administrative remedies *before* filing suit. In response, Dixon asserts that he was only required to exhaust his claims against Dr. Scott before filing the pleading that named Dr. Scott. When Dixon filed the Third Amended Complaint in February 2018, the ARB had already ruled on his February 15, 2016 grievance. Thus, the grievance was exhausted prior to Dr. Scott being haled into court.

The Court agrees with Dixon. In *Cannon v. Washington*, the Seventh Circuit found the plaintiff exhausted his administrative remedies when the defendant was not haled

into court until after his grievance was denied by the ARB. *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005).

> Cannon's 1998 grievance concerning the alleged attack at Menard gave prison officials precisely the type of opportunity to address his complaints that the PLRA contemplates. The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. Cannon's November 1998 grievance apprised prison officials of the alleged attack at Menard, and he did not hale those defendants into court until he had pursued all of the administrative remedies available to him. That he raised these claims by amending his complaint in an already pending case rather than initiating an entirely new proceeding is irrelevant to the objectives of § 1997e(a).

*Id.* (internal citation omitted). The Court of Appeals noted that the district court could have denied the plaintiff leave to file an amended complaint and add claims not previously raised. *Id.* But because it permitted the amendment, it was error to then find the plaintiff did not exhaust. *Id.*

Here, Dixon was permitted to amend his complaint, at which time he added a new claim against Dr. Scott. The February 15, 2016 grievance was fully exhausted prior to this claim being added. Accordingly, Dixon has sufficiently exhausted his administrative remedies with regard to his claim in Count I that Dr. Scott failed to provide him with continuous and timely access to his required medications.

Because Dr. Scott was sued in his individual capacity, however, the Court finds that any pre-2016 grievance is insufficient to exhaust Dixon's remaining claims against Dr. Scott. *See Abdullah v. Shah*, No. 316CV00920NJRDGW, 2018 WL 1082332, at *2 (S.D. Ill. Feb. 28, 2018) ("Abdullah's grievances regarding Dr. Shah could not have provided prison officials at Pinckneyville with an opportunity to address Abdullah's complaints as to Dr. Scott.").

CONCLUSION

For these reasons, the IDOC Defendants' Objection (Doc. 122) is **SUSTAINED in part and OVERRULED in part**. Dr. Scott's Objection (Doc. 123) is **OVERRULED**. The Report and Recommendation (Doc. 119) is **ADOPTED in part and REJECTED in part**. The Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by Defendant Dr. Michael Scott (Doc. 88) is **DENIED**. The Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by the IDOC Defendants (Doc. 92) is **GRANTED in part and DENIED in part**.

Defendant Christine Brown is **DISMISSED** from Plaintiff's claim in Count I regarding access to a physically challenged gym, as well as Counts III and IV.

Defendant Dr. Scott is **DISMISSED** from all claims in Count I except Plaintiff's claim regarding continuous and timely access to his required medications.

Finally, Defendant Lashbrook is **DISMISSED** from Plaintiff's claims in Count I regarding the alleged failure to monitor and control his medical issues and failure to coordinate with Dixon's outside physicians.

**IT IS SO ORDERED.**

DATED:  March 28, 2019

_____
**NANCY J. ROSENSTENGEL
United States District Judge**